HERVEY SULLINGS v. ANDREW J. SHAKESPEARE.

*Jurors—Challenge—Qualifications—Newspaper libels—Justification—Head-lines—Repetition—Printer's errors—Physicians.*

Overruling a challenge for cause and compelling the party to resort to a peremptory challenge does not prejudice him where he still has a right of peremptory challenge which he does not use.

Where a juror challenged for opinion shows by his answers that he has no definite *recollections* there is no apparent ground for holding him disqualified.

In a criminal prosecution for libel the truth alone, if not published with good motives and for justifiable ends, is not always a complete defence.

In a civil action for libel no damages are recoverable for a libel that contains no falsehoods.

Where a declaration for a libel published in a daily newspaper, does not aver its publication in the weekly edition, an offer to prove the circulation of the weekly is properly rejected until proof is made that it was published in that edition.

In an action for newspaper libel an offer was made to show that the declaration was afterward published with head notes referring to plaintiff's attorney but not to the plaintiff. *Held* proper to exclude proof of the head notes.

Repetition of a newspaper libel may be shown by proving the publication of the declaration containing the libelous articles in full.

In a civil action for newspaper libel, the defendant, who was publisher of the paper, was properly allowed to state, on cross-examination, that the article complained of was not written by him.

A civil action for newspaper libel was based on the publication of an article shown by defendant to have been handed to him for publication by plaintiff himself, but which was illegibly written, and was not published as written; there was no showing that it had been intentionally altered nor any plain proof of negligence; and it was also shown by defendant that plaintiff had said he would be satisfied if it could be corrected and put in the weekly edition. Plaintiff did not deny this and was not examined as to the article, and there was no testimony indicating what words were changed. *Held* that the article could not go to the jury as a basis of damages.

A printer's mistakes made without wrongful intent in printing a self-laudatory article furnished for publication by the subject of it, cannot be held a malicious libel.

A physician has no right to publish matters of professional confidence without the approbation of the person concerned; it is a breach of professional duty deserving censure.

In a civil action for libel based on a newspaper squib making game of the plaintiff, it is competent for the defendant to show how far the facts alleged or any part of them were true, and how far their truth would leave any cause of action remaining. It is also admissible to show under what circumstances the article was prepared and published.

Where an action of libel is based on a newspaper squib, and there is evidence tending to show that it arose out of a mutual banter, and that defendant told plaintiff he was going to publish it and that plaintiff assented, it is for the jury to find under proper instructions whether the article is really libelous even though it would be if unexplained.

Where a physician complaining of a libel claims that it injures his medical character, evidence as to his medical standing becomes relevant.

Error to Kalamazoo. Submitted June 21. Decided June 29.

TRESPASS on the case. Plaintiff brings error. Affirmed.

*Oscar Tuthill* for plaintiff in error. Jurors should be unbiased by previous opinions or by their knowledge of the case or by reported facts: *Exp. Vermilyea* 6 Cow. 562: 7 Cow. 121; *Holt v. People* 13 Mich. 224; *Lee v. State* 45 Miss. 114; *Myers v. Commonwealth* 79 Penn. St. 308; one

should not be forced to resort to a peremptory challenge by overruling a challenge for cause: *People v. Weil* 40 Cal. 268; the publisher of a libel cannot defend by showing that he published it in good feeling: Stark. Slander 393, n; Townshend Slander 125, n; *Whittemore v. Weiss* 33 Mich. 349; a publication that tends to bring reproach, scorn and contempt upon a person is libelous: *More v. Bennett* 48 N. Y. 472; *Cary v. Allen* 39 Wis. 482; *Cropp v. Tilney* 3 Salk. 226; Cooley on Torts 207; *Gottbehut v. Hubachek* 36 Wis. 515; *Filber v. Dautermann* 28 Wis. 134; *Scripps v. Reilly* 38 Mich. 10; *Lewis v. Clement* 3 B. & A. 702; *Saunders v. Baxter* 6 Heisk. 369; *State v. Jeandell* 5 Harr. (Del.) 475; *Roberts v. Brown* 10 Bing. 519; *Hillhouse v. Dunning* 6 Conn. 391; repetition of libelous articles is an aggravation of the libel: *Leonard v. Pope* 27 Mich. 145.

*O. W. Powers* for defendant in error.

CAMPBELL, J.   Sullings sued Shakespeare, who was publisher of the Kalamazoo *Gazette*, for publishing two alleged libels.   One was claimed to be libelous because describing plaintiff as having performed a surgical operation by removing a "patty tuber" from the "hypogastrium" of one A. B. Smith. . The other contained an account of a ride taken by plaintiff in Kalamazoo written in a style tending to throw ridicule on plaintiff as displaying ostentation, and as not used to such indulgences.

The jury found a verdict for defendant.   The case went throughout, and the charge also was based, on the theory that the articles unless in some way explained or accounted for were actionable.   The chief objections to the rulings rest on the claim that as the case stood before the court they were too favorable to the defence.   Before referring to the state of the issues and evidence a preliminary question arose concerning the jury.

The record shows that one juror who had an opinion that it would require evidence to remove was challenged, and the challenge was overruled, and then he was challenged peremptorily.   But it appears further that when the trial was

opened plaintiff had still one peremptory challenge that he did not use. If by the overruling of the challenge anything could be inferred in the cause prejudicial to the rights of the plaintiff by compelling him to exhaust his peremptory challenges on persons liable to other objections, the case would be different. But when he runs no such risk the error does not appear to have been injurious. A second juror challenged for opinion seems by his answers to have had no definite recollections at all, and we are not satisfied there was any error in holding him not disqualified. His answers were vague, and the court below evidently determined on his testimony that he had not formed such an opinion as would be material.

A considerable number of objections assume that if an article is maliciously libelous, its truth alone will not be a defence. In this there is a confusion of civil and criminal remedies. In a criminal prosecution the truth alone, if not published with good motives and for justifiable ends, is not always a complete defence. But in civil cases it is well settled that no damages can be given for a libel that contains no falsehood. This disposes of the objections to a large amount of testimony concerning the circumstances of the second libel, which will be referred to more fully in its place.

At the beginning of the hearing, and before any proof of publication of the articles, an attempt was made to prove the circulation of the weekly edition of the *Gazette*, but the court refused to admit it at that time. The declaration did not aver publication in the weekly, and the offer was at least premature, and properly rejected.

After the articles were proven, an offer was made to prove the subsequent publication of the declaration, with head-notes referring solely to the attorney of plaintiff but not to the plaintiff. The court excluded the head-notes. As they had no reference to plaintiff we do not think the exclusion erroneous. The declaration, setting out the obnoxious articles in full, was admitted to show repetition of the libels. This ruling was not injurious to plaintiff.

In the further discussion of this case, the two articles will require separate reference.

The court allowed defendant on cross-examination to explain that the article describing the surgical operation was not written by him. We can see no good reason for excluding this answer. Subsequently defendant testified fully on the subject and showed that the plaintiff wrote it himself and handed it to defendant with a desire that he should publish it, and it was accordingly handed over to the printers as it stood. There was evidence that it was very illegibly written, and there was no evidence of any intentional alteration, and none, unless possibly by very remote inference, that there was any negligence. It was also testified by defendant that plaintiff complained to him of the error, but said if it could be corrected and put in the weekly he would be satisfied, and this was done. Plaintiff when put on the stand did not deny this, and was not examined at all concerning that article. There was no testimony whatever indicating what words had been altered in the article.

We think that this article could not under these circumstances go to the jury as a basis of damages. It does not occur to us that any necessary or natural inference would arise that the offensive words—which however are not shown to have been so written as to put any one in fault—were any more than a printer's blunder. We do not think a libelous meaning is apparent, although circumstances might put a different shade upon them.

But the article being written by plaintiff as a gratuitous puff of himself, and published at his request, we do not see how a mistake of the printers without wrongful intent could be held a malicious libel. This is not a suit on the case for damage from negligence, and the law of libel does not we think reach such a blunder, if any was made.

We cannot forbear, in the interest of public morality, to call attention to the fact that the plaintiff, if a physician, has no right to publish matters of professional confidence, and that the article if published as he wrote it, without the approbation of the person operated on, would have been a

very plain breach of professional duty. Such publications, for no purpose of public instruction and only for private gratification or laudation, deserve severe censure.

The matters included in the second article, which is undoubtedly written in a manner open to criticism, involve, *first*, matters of fact, and *second*, matters of comment. There was evidence to go to the jury on all the facts set forth in it, which were, when reduced to their plain meaning, substantially these, viz.: That on the day previous the plaintiff, who was described with some superfluous initials and appendages, rode about town in an ostentatious style as the sole occupant of an elegant chariot. That he was expecting large profits from a suit with the Vulcanite Rubber Company. The comments, which were interspersed, intimated that the excursion was by way of practice and in anticipation of a more exalted station when more style would be necessary. The article also satirically denies the truth of some further parade, and intimates that it was the first ride he had ever taken.

However offensive the whole article might have been, it was unquestionably competent for the defendant to show that the facts alleged were true or that any part of them were true, and also how far their truth would leave any remaining cause of action. It was also proper to show under what circumstances the article was prepared and published.

Upon this the testimony was not contradictory as to the fact that on a mutual banter, the local editor of the *Gazette* agreed to pay and did pay the driver of the vehicle, if the plaintiff would ride in it. It is uncontradicted that he told plaintiff he proposed to write an article on the subject, but there is a conflict as to plaintiff's assent, and also as to the circumstances of the announcement. There was also evidence bearing on the Vulcanite litigation. Under these circumstances it is evident that plaintiff upon his own statement laid himself open to sharp comment, and upon defendant's proofs there was evidence going far enough, if believed, to make out an assent to the publication.

When the record was in such a condition, it certainly was for the jury to determine, under proper instructions, whether the article was really libelous, if we assume that it would have been so if unexplained. And we cannot regard any of the surroundings as irrelevant.

Neither was the testimony as to his medical standing irrelevant. He made the injury to his medical character a ground of complaint. Moreover it may be remarked that the physicians who were put on the stand testified nothing to his discredit, and it is doubtful how far their testimony could be regarded as of any importance whatever.

The charge given to the jury was, we think, very fair and very explicit in granting all of the essential requests of the plaintiff except such as would have violated the rules before laid down. Nothing was excluded from consideration, and they were given full discretion on the subject of damages. It would have been misleading to give speculative charges on any theory that would have ignored the evidence; and it would have been erroneous to allow recovery for articles or parts of articles which were true. Beyond this we can discover no failure to present the plaintiff's case in as strong a light as it could be placed.

The judgment must be affirmed with costs.

The other Justices concurred.