EDWARD H. MCALLISTER v. THE DETROIT FREE PRESS
COMPANY.

[See 76 Mich. 338.]

*Libel and slander.—Evidence—Justification—Damages.*

1. Where, in a suit for libel for publishing a statement that the
   plaintiff was arrested on suspicion of - having committed a
   felony, it appeared that such arrest was in *fact* made, but that
   certain statements in' the article tending to warrant such
   suspicion were untrue, evidence of the manner in which the
   arrest was made, and of the indignities to which the plaintiff
   was subjected at the hands of the officers making it, is inad-
   missible.

2. When an alleged libelous article is indivisible, and the facts
   asserted are dependent on each other to impute the defamatory
   charge, each material allegation must be justified, or the
   plaintiff will be entitled to his damages suffered on account of
   the unjustified portion.

3. Where a full and complete justification cannot be made of each
   item which goes to make up the libelous article, the facts as
   they exist may be shown in mitigation of damages, and if
   such facts are substantially the same, or not materially variant
   from those alleged, they will reduce the damages to a mini-
   mum. *Sullings v. Shakespeare,* 46 Mich. 413.

Error to Wayne. (Hosmer, J.) Argued February 27,
1891. Decided May 8, 1891.

Case. Defendant brings error. Reversed. The facts
are stated in the opinion, and in 76 Mich. 338.

*F. A. Baker,* for appellant, contended:

1. There was no evidence of malice, wantonness, or of gross
   negligence or recklessness on the part of the defendant or its
   reporter, and it was entitled to a positive instruction that
   exemplary damages should not be allowed; citing *Detroit Daily
   Post Co. v. McArthur,* 16 Mich. 447; *Kreiter v. Nichols,* 28 Id.

496; *Ganssly v. Perkins*, 30 Id. 492; *Batterson v. Railway Co.*, 49 Id. 184.

*Corliss, Andrus & Leete* (*Edwin F. Conely*, of counsel), for plaintiff.

LONG, J. This cause was in this Court and argued at the June term, 1889, and an opinion filed at the October term thereafter, which is reported in 76 Mich. 338. Upon the former trial the defendant had verdict and judgment in the circuit court for Wayne county by direction of the court. That judgment was reversed by this Court, and the cause remanded for retrial. It has been retried, and verdict and judgment found for the plaintiff for the sum of $800. Defendant now brings the case to this Court by writ of error. The action is for libel, based upon an article published in the Detroit Free Press on Sunday, February 12, 1888. The article and the facts and circumstances surrounding the transaction are so fully set forth in the former opinion that it is not necessary to state them here.

It is contended by counsel for defendant that the court should not have allowed the plaintiff, when called as a witness, to go over the whole matter of his arrest and imprisonment in Windsor; that this was an effort on the part of the plaintiff to enhance his damages by bringing into the case facts that are wholly immaterial to the issue, and influenced the jury in their award of damages by the false imprisonment and by the publication of the facts of his arrest.

It appears that upon the trial, when the plaintiff was first interrogated in regard to his arrest and imprisonment, objection was made to the introduction of this testimony on the ground that the effect would be to hold defendant liable for the misconduct of the Canadian officers, and that the plaintiff, in making his case, should

be limited to putting the published article in evidence, and the arrest of the plaintiff at Windsor, without going into the facts and circumstances surrounding the transaction in Windsor, and the imprisonment of plaintiff and Mr. French, and their treatment at the hands of these officers. The court ruled this evidence admissible, and permitted the plaintiff on this trial to go fully into all facts and circumstances surrounding the arrest and imprisonment and the publication of the article. It was contended by counsel for plaintiff that the jury should know all the circumstances connected with the arrest of the plaintiff from the time of his going to Windsor until his discharge and return to Detroit; that this was necessary in order to show the falsity of the publication, the good intentions of plaintiff in the whole transaction, the false impression that the item tended to convey that plaintiff and French were guilty of a felony, and the carelessness and recklessness of the reporter in his information and in writing the article.

It was stated by this Court in the former opinion that the item was confessedly untrue in several particulars, and it appears upon this trial that these false items all tended, in the connection used, to carry the impression that the plaintiff and French were guilty of a felony, as stated in the former opinion.

"*First.* The coincidence, which was not a true one, that about $30 worth of stamps had been stolen from Bothwell, and the same amount found upon there parties.

"*Second.* That they were 'hard-looking citizens,' carrying the impression, as Quinby admits, that they were a 'couple of tramps.'

"*Third.* That they canvassed the entire business part of Windsor, in the effort to sell stamps at half price, which contains two untruths.

"*Fourth.* That they *at last* tried to sell the stamps to the postmaster."

These facts fully appear in the present trial.

The plaintiff and his companion, French, were treated by the police of Windsor with rudeness, calculated to arouse great indignation at a bare recital. But the defendant is not to be punished for such treatment. It did not cause the plaintiff's arrest and detention, nor his ill treatment; and it was improper to permit the testimony relative to what was said and done by the police officers to be given to the jury. The plaintiff had the right to lay before the jury the article published, and to show the facts and circumstances surrounding the transaction, so that the jury might determine the falsity of the article and the manner in which the information was procured which led to its publication. These would be proper inquiries. But the treatment of the plaintiff and French by the chief of police of Windsor and his deputies was wholly immaterial to the issue, and could not be otherwise than prejudicial to the defendant before the jury, who, in estimating plaintiff's damages for injured feelings, would be likely to be affected by a sense of the wrongs perpetrated upon the plaintiff while in the custody of these officers. It is true that the court directed the jury that the only thing in the case was the publication of the matter so far as it was untrue, and that they should not take into consideration in the matter of damages the outrages committed by the Windsor officers, and that whether the arrest was legal or justifiable was wholly immaterial to the issue, and they should not consider the arrest at all, but only the publication. This testimony had been given to the jury, however, tending to create in their minds a feeling of indignation at such ill usage, and the charge very likely would not remove it, and it would more than likely remain with them when they retired to the jury-room to consider of their verdict, notwithstanding the charge. *People v. Evans,* 72 Mich. 367.

The counsel for the defendant requested the court to instruct the jury as follows:

"1. The article sued on does not charge or impute to the plaintiff any participation in the Bothwell burglary, but merely states that he was arrested on suspicion thereof, giving in connection therewith some of the facts on which the suspicion was founded.

"2. It appears that the article was true so far as it was stated that McAllister and French were arrested on suspicion of being connected in the Bothwell burglary; that some Canadian stamps had been taken from the Bothwell post-office; and that McAllister and French had canvassed a portion of the business part of Windsor trying to sell Canadian postage stamps at a discount; that they tried to sell the stamps to Postmaster Wigle, who had them arrested; and that they were searched at the station, and some postage-stamps were found on one of them; that they gave their names as Edward H. McAllister and Lester B. French; that Chief Bains decided to hold them to await developments.

"3. The plaintiff is not entitled to recover anything for publishing the facts stated in the article that are true, and the jury should carefully eliminate from their verdict any allowance on account thereof, the plaintiff only being entitled to recover such damages as resulted from the inaccuracies of the details set forth in the article, and from them alone."

"9. The statement in the article that the amount of the Bothwell burglary was $2,000 is not a material variance from the facts, and the plaintiff is not entitled to recover anything because the actual amount was only about $200.

"10. The statement in the article that the plaintiff and his companion were hard-looking citizens is not libelous, and the plaintiff cannot recover anything because that statement might, in the opinion of the jury, be false.

"11. The only material variance between the article and the actual facts is the statement that about the same amount of stamps were stolen as were found on the person of plaintiff when he was arrested, but the plaintiff can only recover so far as that statement, considered by itself, created an additional or further belief in the minds of those who read the article that the plaintiff was guilty.

"12. The statement that the plaintiff and his compan-

ion offered the stamps for sale at the post-office, after having offered them at other places, is not a material variance from the actual facts.

"13. The statement that the plaintiff and his companion had canvassed the entire business portion of Windsor appears to have been substantially true, they having offered the stamps at four places in different parts of Windsor.

"14. Under the pleadings and proofs plaintiff cannot recover anything for injuries to his feelings."

The circuit judge charged the jury upon the liability of the defendant as follows:

"*Gentlemen of the Jury:* The publication in the Free Press of the article complained of in this case was untrue in several particulars:

"1. The coincidence that about $30 worth of stamps had been stolen from Bothwell, and the same amount found upon these parties.

"2. That they were hard-looking citizens.

"3. That they canvassed the entire business portion of Windsor in the effort to sell stamps at half price.

"4. They went to the post-office at last, instead of at first.

"Now, gentlemen of the jury, the defendant might have published the simple fact that the plaintiff and Mr. French had been arrested on suspicion of having committed the Bothwell burglary. That was true. They were arrested for that reason; and the truth may always be received in libel cases, in bar of such action; but, so far as the article in question, in addition to setting forth the arrest, sets forth circumstances untrue in fact, which had a tendency to induce a belief that the plaintiff was guilty of some complicity in the crime mentioned, it is no doubt libelous, and the alleged circumstances to which I have called your attention have that tendency. It follows that the plaintiff is entitled to a verdict for such sum as will compensate him for the damages he has suffered."

The injury to the plaintiff for which the defendant is liable does not arise from stating in the publication that plaintiff was arrested on suspicion, for he was; but how much, if any, was he injured by the errors contained in

the statement published? Would people who read the article be more likely to believe that plaintiff had in fact some connection with the burglary by the statement as published than they would if the article had stated that $110 worth of stamps and about $80 in cash had been stolen from the post-office at Bothwell, and that French and McAllister were arrested on suspicion, and were found to have $27 worth of stamps in their possession, or had it stated that they endeavored to dispose of the stamps by applying first at the post-office and afterwards at two or three book-stores and a grocery, and were arrested when they came out of a book-store, on suspicion of having been concerned in the Bothwell burglary? It is possible that the simple coincidence of the amount of stamps stated to have been stolen with the amount stated to have been found upon them may have influenced some readers to believe that the suspicion was well founded. But whether it would have created a better ground for suspicion than the fact of offering $27 worth of stamps for sale at a discount, when $110 worth had been stolen, is problematical. Some readers might have thought that the guilty parties, to avoid suspicion, would not have offered the whole quantity for sale at once, and to them the circumstances would have been as strong, if not stronger, to create suspicion than the coincidence referred to. The plaintiff is damaged, if at all, by this error of statement just to the amount that the people would be more likely to believe the suspicion well founded than they would so believe from the circumstances of plaintiff's offering to sell $27 worth of stamps at a discount, and the correct amount of stamps stolen had been stated. And so of the other errors mentioned. Would any person reading the article be less likely to believe the suspicion well founded if it had stated that French had applied to the post-office at first instead of at last, or, instead of

saying that two hard-looking citizens canvassed the entire business part of Windsor in the effort to sell stamps at half price, it had stated that they visited the post-office, two or three book-stores, and a grocery in the effort to sell stamps? The plaintiff introduced no proof as to the extent of the business portion of Windsor, nor as to the appearance of the plaintiff and his companion, other than what the jury could gather from their appearance upon the trial.

The libelous article set forth in the declaration is not divisible. The gist of it is that the plaintiff and Mr. French were arrested on suspicion of having been concerned in the crime committed at Bothwell; and circumstances are stated which afford grounds for such suspicion. The words impute a crime, and are actionable without averring special damages.

The defendant, under the plea of the general issue, gave notice of justification, and set out the fact of the breaking and entering of the post-office at Bothwell, and the larceny therefrom of a large number of Canadian stamps of the value, to wit, of $30, and of money, jewelry, etc., to the value of $200; that the plaintiff went to Windsor on the 11th of February, 1888, with a companion, and offered for sale a quantity of Canadian postage stamps of the value of about $30, and among other persons to whom he offered them was the assistant postmaster; that the assistant postmaster reported the fact of the burglary and larceny at Bothwell, and the attempt of the plaintiff to sell about the same quantity of stamps, to a police officer, and therefore the officer had reasonable cause to suspect the plaintiff and his companion, and took them before a police magistrate to be dealt with according to law.

It is sufficient for the defendant to justify so much of the defamatory matter as constitutes the sting of the

charge, and it is unnecessary to repeat and justify every word of the alleged defamatory matter, so long as the substance of the libelous charge be justified. But when the article alleged to be libelous is indivisible, and the facts asserted are dependent on each other to impute the defamatory charge, then each material allegation must be justified, or the plaintiff will be entitled to his damages suffered on account of the portion not justified. It is also settled law in this State that, where a full and complete justification cannot be made of each item which goes to make up the libelous article, the facts as they exist may be shown in mitigation of damages, and if such facts are substantially the same, or not materially variant from those alleged, they will reduce the damages to a minimum. *Sullings v. Shakespeare,* 46 Mich. 413. It is laid down in Odgers on the Law of Libel and Slander, at page 170, that, if the substantial imputations be proved true, a slight inaccuracy in one of its details will not prevent the defendant's succeeding, providing the inaccuracy in no way alters the complexion of the affair, and would have no different effect on the reader than that which the literal truth would produce; citing *Alexander v. Railway Co.,* 34 Law J. Q. B. 152; *Stockdale v. Tarte,* 4 Adol. & E. 1016; *Blake v. Stevens,* 4 Fost. & F. 239. And if the jury should find that they were not materially variant, or would not produce a different effect than the literal truth, then the plea of justification would have been made out to the whole article; but if they should find to the contrary, then the plaintiff would be entitled only to such damages as would, in the opinion of the jury, considering the mitigating circumstances with reference to the actual truth regarding the transaction, compensate the plaintiff for the injury sustained by reason of the defendant not having given a truthful statement of what transpired upon the occasion referred to.

The court rightly instructed the jury that there could be no exemplary damages under the testimony in the case.

The third request of the defendant's attorney states substantially the law applicable to the case, and should have been embodied in the instructions given.

The other requests have been disposed of by what has been said above, and were properly refused.

The judgment should be reversed, and a new trial ordered.

CHAMPLIN, C. J., and GRANT, J., concurred with LONG, J.

MORSE, J. I concur in the reversal of this judgment on account of the errors noted by Mr. Justice LONG, but I cannot concur in all that he has said in relation to the probable effect of the differences between the publication and the actual facts upon the minds of those reading the publication. And the effect of the false statements in such publication is for the jury to determine, and not the courts.

MCGRATH, J. I think the court erred in refusing to instruct the jury as requested by counsel for defendant in his third request, but I think that the error in the admission of the testimony as to the treatment of plaintiff by Windsor officers was cured by the court's charge to the jury.