KOVACS *v.* MAYORAS.

1. EVIDENCE—HEARSAY—CROSS-EXAMINATION.
    On cross-examination of plaintiff, in an action for libel, the trial court erred in permitting the witness to testify that a third party had approached him, claiming to act in defendant's behalf, to propose a compromise.

2. SAME—LIBEL—RETRACTION.
    Nor was a letter admissible in evidence, to plaintiff from the editor of a newspaper which published the alleged libel, containing criticisms of defendant who was shown to have caused the objectionable article to be published.

3. SAME—REPUTATION—LIBEL AND SLANDER.
    Specific facts shown by testimony and admitted by plaintiff in a libel suit on cross-examination must stand against him as qualified or explained by him, although the evidence tends to impeach his good reputation, and it is not permissible to introduce evidence in rebuttal showing his good reputation in the community. The rule that defendant may show bad reputation does not authorize plaintiff in the first instance to open the door by general evidence of his good reputation.

4. LIBEL AND SLANDER—PLEADINGS—DAMAGES.
    For damage to plaintiff's feelings because of libelous statements relating to himself and wife, proper averments in the pleading are required in order to authorize a recovery and it is error to permit the jury to assess damages by reason of what was published concerning his wife, if complaint is only made in the declaration in so far as it related to him.

5. SAME.
    A married woman may bring a sole action for slander; and her action is not barred by the recovery of damages by the husband for slanderous statements concerning himself and wife.

6. SAME—JUSTIFICATION—TRUTH AS DEFENSE.
    It is sufficient for the defendant to justify so much of the defamatory matter as constitutes the sting of the charge: it is unnecessary to justify every word thereof

so long as the substance be justified. But when the article is indivisible and the facts asserted are dependent on each other to impute the defamatory charge then each material allegation must be justified or plaintiff may recover for the part not justified. Where a full and complete justification cannot be made of each item constituting the libel, the facts as they exist may be shown in mitigation of damages, and if such facts are substantially the same, or not materially variant from those alleged, they will reduce the damages to a minimum.[1]

7. SAME.

  *Held*, that the court erred in charging the jury that there was no evidence of justification.

Error to Muskegon; Sullivan, J. Submitted April 25, 1913. (Docket No. 84.) Decided May 28, 1913.

Case by Steve Kovacs against Peter Mayoras for libel. Judgment for plaintiff. Defendant brings. error. Reversed.

*R. J. Macdonald* and *William H. Simpson,* for appellant.

*Turner & Turner,* for appellee.

STONE, J. This is an action on the case for libel. The libel claimed was the publication of a newspaper article in the Hungarian language, in a paper published at Cleveland, Ohio, in that language. The article is set out, both in the Hungarian and English languages, in the declaration. The inducement, or introductory part of the declaration, is in the common form in such action, as to the proper conduct and behavior of the plaintiff in the community, and that he had not ever before been suspected to have been guilty of the offenses and misconduct therein charged, etc. The declaration proceeds in this language:

---

[1] The authorities on the question of truth as a defense to a civil action for libel or slander are collated in a note in 31 L. R. A. (N. S.) 132.

"Yet the said defendant, well knowing the premises, but greatly envying the happy state and condition of the said plaintiff, and contriving, and wickedly and maliciously intending to injure the said plaintiff, in his good name, fame and credit and to bring him into public scandal, infamy, disrepute and disgrace with and among all his neighbors and other good and worthy citizens of this State, and to cause it to be suspected and believed by those neighbors and citizens that he, the said plaintiff, was a bad man, was in the habit of getting drunk, and when drunk threatened to shoot people, and that he had been arrested for the same, etc., to vex, harass, oppress, impoverish and wholly ruin him, the said plaintiff, heretofore, to wit, at the city of Muskegon Heights, said county, did on or about, to wit, the 28th day of April, 1911, compose and write a certain article in the Hungarian language of and concerning said plaintiff and sent the same to the Hungarian paper published at Cleveland, Ohio, called the 'Szabadsag,' the English of which is 'Liberty,' which Hungarian paper has a large circulation among the Hungarians at Muskegon Heights and elsewhere where plaintiff resides, and caused the same to be printed in said paper and so circulated as aforesaid, and did falsely, wickedly and maliciously compose and publish, and cause and procure to be published of and concerning the said plaintiff in said paper aforesaid the following: 'Stephen Kovacs Pogany of Szalona (Borsod county) got tipsy, together with his wife Susanna Vecsei to the great disgrace of the Hungarians who live soberly, in peace, the alcohol made them to lose their reason, and after they had had enough of their amusement Kovacs Pogany rushed out to the street with a loaded revolver and threatened to shoot everybody. Luckily, the pistol did not go off, and thus could not do any damage in human life. His example was followed by his wife whose revolver did not refuse to go off, but the intervention of the police prevented any greater mishap.' (Meaning thereby that said plaintiff and his wife had got drunk to the great disgrace of all their race and rushed out into the street and tried to shoot everybody.) In another part of which said libel there is contained also the following, to wit: 'The couple that so forgot themselves were taken to the city jail

and after a hearing they were set free, the woman did not wait for the sentence of the judge but arranged another scandal and attacked her neighbor, Mrs. Miklos, who was in the family way, knocked her to the ground, tore her hair and kicked her and only the intervention of an English family who lives in the neighborhood saved the unfortunate woman from death. She was then treated by a doctor that was called. Mrs. Kovacs will get her punishment, but it remains very deplorable that Hungarians should thus disgrace their countrymen.' (Meaning thereby that the wife of said plaintiff was taken to jail and arranged another scandal and knocked a woman down; and but for the intervention of an English family would have killed her; meaning that such Hungarians as said plaintiff and his wife were a disgrace.) And said plaintiff avers that by means of the committing of which said several grievances by the said defendant as aforesaid, he, the said plaintiff, hath been and is greatly injured in his good name, fame, and credit, and brought into public scandal, infamy, and disgrace with and amongst all his neighbors and other good and worthy citizens of this State in so much that divers of those neighbors and citizens to whom the innocence and integrity of the said plaintiff in the premises were unknown have on occasion of the committing of the said grievances by the said defendant as aforesaid from thence hitherto suspected and believed, and still do suspect, the said plaintiff to have been and to be a person guilty of the misconduct above set forth, and have by reason of the committing of the said grievances by the said defendant as aforesaid from thence hitherto wholly refused and still do refuse to have any transaction, acquaintance, or discourse with him, the said plaintiff, as they were before used and accustomed to have and otherwise would have had, and the said plaintiff hath been and is by means of the premises otherwise greatly injured, to wit, at the city of Muskegon Heights, said county, to the damage of the said plaintiff of $2,000."

The defendant pleaded the general issue, and gave notice thereunder that he, upon the trial, would insist and give evidence that the article as printed and published in the newspaper mentioned in said plaintiff's

declaration was true, in the ordinary meaning and generally accepted sense thereof.

Upon the trial of the case there were numerous translations by different witnesses submitted to the jury.

Upon the cross-examination of the plaintiff he was permitted, against the defendant's objection and exception, to testify that a man named Steve Hobi told him that defendant sent him to plaintiff to make a settlement between plaintiff and defendant. This testimony defendant's counsel moved to have stricken out, which request the court denied. The plaintiff was also permitted, against defendant's objection and exception, to introduce and read in evidence, without any proof of signature, a letter purporting to be written to the plaintiff by the editor of the Hungarian paper in which the claimed libelous article was published, in answer to a letter written by plaintiff to the editor. That letter was in substance as follows:

"CLEVELAND, OHIO, May 2, 1911.

*"Sir Kovacs:*

"We received your letter and we are your service any time you please in this matter. The article was sending by a man Peter Mayoras. We are willing to send his letter back and you can get on the track who was the man who sent this article in. We are pleased Mr. Kovacs, after you get done with this letter to be kindness to send it back to us and write soon how this stands. Of course we are willing to write it in the paper that that man is make a fool out of us. Please believe us, the man who is do such a thing with his friend he ain't worth much to look at him. Please you not to get discouraged. You should believe that his work is wrong and it was worse for him than anything else. If we asking you for the letter of Peter Mayoras to send it back, we will wait for it and wait for instructions, so that we want to know something about it.

"Yours truly,<br>"THE EDITORS."

The court permitted this letter to be read in evidence, for the reason that it was based on the cross-examination of the plaintiff. He had stated upon cross-examination that the newspaper "didn't give me no retraction at all yet, the paper didn't; the paper just sent me the letter back what he wrote."

During the trial a witness for plaintiff was permitted to testify on rebuttal, against defendant's objection and exception, as to plaintiff's general reputation in the community where he lived.

Many witnesses were called by the defendant and gave testimony tending to show the truth of the publication. The defendant, when upon the stand as a witness, admitted that he had written the article declared upon, and had sent it to the newspaper already named for publication.

At the close of the testimony the defendant requested the court, among other things, to charge the jury as follows:

"(6) The plaintiff cannot recover in this case any damages for anything that was published in the article mentioned in the declaration in reference to his wife.

"(7) If you find from the evidence that the defendant has proven under his notice of justification by a preponderance of evidence that the statements made in the claimed libelous publication are true, then he has made a complete defense, and in that case your verdict should be no cause of action.

"(8) The defendant requests the court to charge the jury that if they find that the defendant has justified to any part of the article, as to that part no recovery can be had."

The court in its charge to the jury used the following language:

"So here we have an article that gives one continuous transaction, or a sequel growing out of the first transaction there, and when they come to make their defense the defendant does not claim at all that he has made a defense to the article as published. The court

would be in error in telling you that they had made a complete defense, because the shooting of the woman was a long time after the taking of the revolver by the man. The attack upon Mrs. Miklos, if anything of that kind was done, did not refer to the same transaction at all. So in making their defense they have not made what the law requires them to do. That is, they must put in evidence that tends to prove that the very publication, the ordinary meaning to be drawn from the publication, is true, and they haven't done that, so that the defense of justification of truth, I am bound to tell you, has not been made out, and for that reason the matter comes right up to this: When you have taken what I have said altogether it comes to this: Did this man publish this article? Now, anybody, no matter who it is, that writes an article, or any person that puts it up in print, or the owner of the newspaper that publishes the article, all of them, are guilty of the publication, and each of them are liable for the necessary result of the publication, and so when the defendant was put upon the stand he testified that that part of the article that appeared in the paper was written by himself, so we have the proof, and admitted in the testimony, that the article was published in the paper. I have told you that it was libelous; I have told you that the defense of justification hadn't been made out, and the defendant has told you that he was the author. So there we have the whole case before you, for the case has been made, the main case has been made, and it is an injury to one's good name to have a libel published of him. * * * There has been something said to you about Mrs. Kovacs; she isn't here as a plaintiff at all. You cannot and ought not to render any verdict because of any mental suffering that she has sustained in this case. That isn't here for you. It is only the suffering that may have been sustained, so far, was probably sustained by Mr. Kovacs, and only the damage that was reasonably probable that he sustained by the publication, and that publication mentioned his wife in there. Now you have got a right to take that into consideration as far as the injury occasioned him is concerned, but no injury that was done to his wife. It is only the feelings and the reputation of Mr. Kovacs that you are concerned with.

"*A Juror:* There is one question I didn't understand. Does that mean you can take into consideration a husband's feelings because his wife has been spoken about?

"*The Court:* Yes, you can take into consideration a husband's feelings because his wife is spoken about —all that he suffered in relation to the publication. You have got a right to consider that, and it is your duty to consider that, but anything that Mrs. Kovacs herself may have suffered, that isn't before us here in this case."

There was a verdict for the plaintiff for $100 damages to plaintiff's reputation, and for $400 for injury to his feelings, and judgment was thereupon rendered for the sum of $500. The defendant brings the case here upon writ of error, and by his assignments of error has raised the questions that we have referred to.

(1) By the third assignment of error it is claimed that the court erred in permitting the plaintiff on cross-examination to testify to what the man Hobi had told him. This seems to have been hearsay pure and simple, and should not have been admitted. We think the court erred in refusing to strike the same out on motion of defendant's counsel.

(2) We think it was error to admit the letter in evidence. Not only did it appear that this letter was not authenticated in any way, but it was entirely incompetent and immaterial as evidence. It was from a stranger and was hearsay. It may well be claimed that it was damaging to the defendant, because it assumed to exonerate the plaintiff and condemn the defendant. The opinions and many expressions in the letter could not have been testified to by the writer if he had been sworn as a witness. The reason assigned by the trial judge for admitting the same in evidence was not a good reason. This point is covered by the fourth assignment of error.

(3) The fifth assignment of error complains of, or relates to, the ruling of the court permitting a wit-

ness, against objection and exception, on rebuttal, to testify as to the general reputation of the plaintiff in the community where he lived. This evidence was clearly inadmissible under the rulings of this court. *Hitchcock* v. *Moore*, 70 Mich. 112 (37 N. W. 914, 14 Am. St. Rep. 474). This court said, in the case above cited, after referring to many authorities:

"Nor can the fact that inquiries are made, upon cross-examination, in relation to specific facts that may tend to weaken his (plaintiff's) good character and lessen his good reputation, change this rule. Such specific facts cannot be met, either as a part of the main case, or upon rebuttal, with evidence of general reputation in the community where he lives. If, upon such cross-examination, he admits the existence of such specific facts, they must stand against him for what they are worth, except as they may be explained and qualified by evidence or explanations in his behalf. If they are denied by him, and the defendant introduces testimony tending to establish them, he has the right in rebuttal to deny them, and establish their falsity or nonexistence."

See, also, *Howard* v. *Patrick*, 43 Mich. 121 (5 N. W. 84) ; *Fahey* v. *Crotty*, 63 Mich. 383 (29 N. W. 876, 6 Am. St. Rep. 305) ; *Munroe* v. *Godkin*, 111 Mich. 183 (69 N. W. 244).

Plaintiff's counsel contend that this testimony was proper and competent under the decisions of this court, and they cite the case of *Georgia* v. *Bond*, 114 Mich. 196 (72 N. W. 232). We think that counsel have misapprehended the scope of that decision. That is to the effect that the defendant may show plaintiff's bad reputation for honesty and uprightness in a place where he had formerly lived. This rule was recognized by us in *Wells* v. *Toogood*, 165 Mich. 677 (131 N. W. 124), where we referred to authorities, including the one cited by plaintiff's counsel. The rule that defendant may show the general bad reputation of the plaintiff in an action of this nature does not per-

mit the plaintiff, in the first instance, to open the door by general evidence tending to show his good reputation. We think the court was in error in admitting this testimony.

(4) The tenth, thirty-third, and thirty-fourth assignments of error raise the question as to plaintiff's right to recover in this case any damages for anything that was published in the article mentioned in the declaration in regard to his wife.

We think the court should have given plaintiff's sixth request to charge, and erred in that portion of his charge relating to damages by reason of what was said in the article about the wife. The ground of this holding is because of the condition of the pleadings in the case. We recognize the rule as one well established that, where the language published concerns husband and wife, the husband may sue alone for the injury to him, and that a recovery by the husband for slanderous words spoken of himself and wife is not a bar to another action by the wife for the same slanderous words. 21 Cyc. p. 1529; Townshend on Slander & Libel (4th Ed.), §§ 241, 302; *Gazynski* v. *Colburn,* 11 Cush. (Mass.) 10; *Bash* v. *Sommer,* 20 Pa. 159; *Ebersoll* v. *Krug,* 3 Binney (Pa.), 528; *Hart* v. *Crow,* 7 Blackf. (Ind.) 351.

This court held, as early as the case of *Leonard* v. *Pope,* 27 Mich. 145, that a married woman may bring a sole action for slander.

The difficulty in the instant case is that the only allegation in the declaration is for injuries on account of things said of and concerning the plaintiff, and we think, under this declaration, recovery could only be had for things said of and concerning him, and recovery cannot be had for things said of and concerning his wife. We have above specifically referred to portions of the declaration. Both in the inducement and in the concluding portion of the declaration complaint is made of the article in so far as it related to

the plaintiff only, and it nowhere claims any damage to the plaintiff by reason of what had been said of the wife. It is true that the article as published referred to the wife, and the innuendoes refer both to the husband and wife. But no complaint is made of these, and there is no claim in the declaration that the plaintiff suffered any injury because of the allusions to the wife. The object of pleading is to apprise the opposite party and the court of the precise cause of action or tort complained of. And here the only tort complained of is the injury to the plaintiff because of what was said of and concerning him. We think therefore that the court erred in submitting that question, under the pleadings, to the jury.

(5) We think the court should have given defendant's seventh and eighth requests to charge, and that it erred in that portion of the charge covered by assignments of error numbered 20 to 26, inclusive, in that it withdrew the subject of justification from the jury. We have read the testimony in this case with care upon this subject, and we do not think that the court was warranted in holding that there was no evidence tending to show justification. The most that can be claimed as libelous in the article is that it charged plaintiff and his wife with getting drunk; of losing their reason; of threatening to shoot everybody; of being taken to the city jail and after having a hearing were set free; of the wife attacking her neighbor, Mrs. Miklos, who was in a family way, knocking her to the ground, tearing her hair and kicking her, and by the intervention of an English family the unfortunate woman was saved from death; that the woman was treated by a doctor; and that it was deplorable that Hungarians should thus disgrace their countrymen. More than half a score of witnesses gave testimony tending to show the truth of these charges, and we think that it is not a case where it can be said

there was no evidence of justification to be submitted to the jury.

In the case of *McAllister* v. *Free Press Co.*, 85 Mich. 453 (48 N. W. 612), and 95 Mich. 164 (54 N. W. 710), this court said:

"It is sufficient for the defendant to justify so much of the defamatory matter as constitutes the sting of the charge, and it is unnecessary to repeat and justify every word of the alleged defamatory matter, so long as the substance of the libelous charge be justified. But when the article alleged to be libelous is indivisible, and the facts asserted are dependent on each other to impute the defamatory charge, then each material allegation must be justified, or the plaintiff will be entitled to his damages suffered on account of the portion not justified. It is also settled law in this State that, where a full and complete justification cannot be made of each item which goes to make up the libelous article, the facts as they exist may be shown in mitigation of damages, and if such facts are substantially the same, or not materially variant from those alleged, they will reduce the damages to a minimum. *Sullings* v. *Shakespeare*, 46 Mich. 413 [9 N. W. 451, 41 Am. Rep. 166]. It is laid down in Odgers on the Law of Libel and Slander, at page 170, that, if the substantial imputations be proved true, a slight inaccuracy in one of its details will not prevent the defendant's succeeding, providing the inaccuracy in no way alters the complexion of the affair, and would have no different effect on the reader than that which the literal truth would produce."

The article naturally divides itself into two subjects —the conduct of the plaintiff and the conduct of plaintiff's wife. We think it was a proper case to apply the rule announced in *Hay* v. *Reid*, 85 Mich. 296 (48 N. W. 507), where this court held that the trial court should have given the following requests to charge:

"If you find evidence to sustain one or more of these charges, as contained in the said publication, which charges I have now enumerated, but do not find evidence to sustain the truth of all of them, still the plain-

tiff would be entitled to a verdict at your hands, and the effect of justifying as to a part of the charges, and not the whole, would be only to mitigate or reduce the damages which the plaintiff would otherwise be entitled to recover at your hands."

We have looked through the record in vain to find any language that justified the trial judge in instructing the jury that "the defendant does not claim at all he has made a defense to the article as published." We think the subject of justification and partial justification, or justification of separate charges, should have been submitted to the jury with proper instructions.

We have examined the other assignments of error, but are of opinion that the questions discussed will not arise upon another trial, in view of what we have here said.

For the errors pointed out, the judgment of the circuit court is reversed, and a new trial granted.

STEERE, C. J., and MOORE, McALVAY, BROOKE, KUHN, OSTRANDER, and BIRD, JJ., concurred.