Cavanagh, J.
(dissenting). Though I do not disagree with the majority’s articulation of the standard for falsity under Canon 7(B)(1)(d) and its application of that standard to exhibits 3, 4, and 5, I disagree with the application to exhibit 1 in this case. Because I believe that exhibit 1 conveys a false communication, I would impose some level of discipline on respondent. I, therefore, must respectfully dissent.
Among other matters, exhibit 1 advertised respondent’s role in challenging property tax base sharing legislation. Respondent stated that the legislation “stole from our taxpayers, our schools and our children to help prop up Coleman Young,” and stated that, in the course of “standing up for your children,” he took “the state to court, arguing one appeal after another, until the state backed down and allowed your kids to benefit from your hard-earned tax dollars.”[1] The Judicial Tenure Commission concluded that this exhibit falsely communicated that respondent had “prevented Coleman Young and others from taking tax dollars from Warren and Center Line property owners to spend on the Detroit school system.” In contrast with the majority, I agree.
As the majority opinion explains, Warren and Center Line were placed in region 1 under the tax legislation, and Detroit was placed in region 2. Ante at 79. Because the legislation provided that school districts would only share revenue with other districts within the same region, tax revenue from Warren and Center Line could not actually have been directed to Detroit. The majority concludes that respondent’s *95 statement that he prevented Warren and Center Line’s tax revenue from being directed to Detroit is nevertheless not false because the overall legislative scheme provided that if several contingencies had arisen, Warren and Center Line’s tax revenues could have been directed to Detroit. See id. at 79-80; see also MCL 380.752(3), repealed 1993 PA 175.
That conclusion, however, does not consider what respondent actually communicated. Importantly, in exhibit 1 respondent stated that Coleman Young and his supporters “stole from our taxpayers” to “help prop up Coleman Young.” Though I take no issue with respondent’s hyperbolic use of the term “stole,” it nonetheless refers to a completed act, not a potential act that depended on a chain of contingencies, as the majority concludes.[2] Here, respondent did not state that the legislation “would steal,” “could steal,” or “was going to steal” Warren and Center Line’s tax revenue. Instead, by stating that the legislation “stole” from Warren and Center Line, respondent communicated that the perceived wrong had already been perpetrated. Further, he communicated that the lawsuit he handled corrected that wrong when “the state backed down.” Because of the statutory region classifications, though, revenue from Warren and Center Line had not, and could not have, gone to Detroit. By communicating that he brought a lawsuit that prevented Detroit from receiving tax revenue that had *96 been stolen to benefit Detroit, then, respondent conveyed an “inaccurate statement,” that is, a false communication.
With that false communication, the analysis must proceed to step two, which considers whether the gist, substance, or sting of the communication is true despite the factual inaccuracy. That is, the analysis must consider whether the inaccuracy “alters the complexion of the affair, and would have no different effect on the reader than that which the literal truth would produce . . . .” Rouch v Enquirer & News of Battle Creek (After Remand), 440 Mich 238, 259; 487 NW2d 205 (1992), quoting McAllister v Detroit Free Press Co, 85 Mich 453, 461; 48 NW2d 612 (1891); see also ante at 73-74.
For largely the same reasons that the communication was false, the gist, sting, and substance of the communication is also false. Respondent stated that “Coleman Young and the Lansing crowd” completed an act-they “stole” from Warren and Center Line-and that respondent handled a lawsuit, the result of which was that they “backed down and allowed your kids to benefit from your hard-earned tax dollars.” The literal truth, however, is that when respondent was handling the lawsuit he referenced, no revenue had been, and no revenue could be, directed from Warren and Center Line to Detroit. This literal truth would have a different effect on the reader than respondent’s inaccurate statement. The effect of the literal truth was that respondent was counsel on a case challenging legislation that, at most, might have sent revenue from Warren and Center Line to Detroit if certain facts had come to be, but was not sending any revenue from Warren and Center Line to Detroit. On the other hand, the effect of respondent’s inaccurate *97 statement was that the legislation “stole” from Warren and Center Line, sent the revenue to Detroit to “prop up” its mayor, and that the suit respondent handled was necessary to force the state to back down and allow school children in Warren and Center Line to benefit from those cities’ tax dollars and stop sending those tax dollars to Detroit. Because the pleaded truth would have had a different effect on the mind of the reader than the inaccurate statement, the statement was not substantially true, and therefore violated Canon 7(B)(1)(d).
This violation of the Canon provides a basis for imposing discipline on respondent. Recently, this Court set forth a nonexhaustive list of factors that should be applied when determining the sanction for judicial misconduct. See In re Brown, 461 Mich 1291, 1292-1293 (2000). However, absent a majority favoring disciplining respondent, an analysis of those factors would have no effect in this case, so I will refrain from discussing them. Suffice it to say that I conclude that respondent has violated Canon 7(B)(1)(d). I, therefore, respectfully dissent.
Kelly, J., concurred with Cavanagh, J.

 Ante at 76-77, for a full description of exhibit 1.

 As the msgority states, respondent used “stole” to colorfully describe the effect of the legislation. Ante at 81. “Colorfully” also euphemistically describes the racial overtones this flier intended to convey. However, had respondent used a less inflammatory phrase, perhaps saying that the legislation “appropriated revenue from” or “redistributed money from” Warren and Center Line to Detroit, this point would nevertheless remain true. The focus is not the connotation of the term respondent used to describe the act, but that the term he used described a completed act rather than a pending act.